**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 19-04008-01-CR-C-BCW |
| **SHELDON CURTIS HIGGINBOTHAM**, | |
| Defendant. | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through Timothy A. Garrison, the United States

Attorney for the Western District of Missouri and undersigned counsel, respectfully submits this

sentencing memorandum in the above captioned matter, set for a sentencing hearing on August 8,

2019. For the reasons set forth below, the Government recommends jointly with the defendant

that the Court sentence the defendant, Sheldon Curtis Higginbotham, to 121 months' imprisonment

and five years' supervised release.

**I. BACKGROUND**

On April 23, 2019, Higginbotham pled guilty to Count 1 of a 3-count Indictment, which

charged receipt of child pornography. Higginbotham agreed to the following facts:

> On July 30, 2018, the Boone County Sheriff's Department Cyber Crimes Task
> Force (BCCCTF) received a report from the National Center for Missing and
> Exploited Children. The complainant, Facebook Inc., had located apparent child
> pornography images on a Facebook account registered to SHELDON CURTIS
> HIGGINBOTHAM. A BCCCTF detective obtained records from Facebook and
> located approximately 4 images flagged by Facebook. The records showed
> SHELDON HIGGINBOTHAM, Facebook username no.brakes1523, email address
> fox2315@gmail.com, had uploaded the images using IP address 71.49.73.91. The
> images depicted a young pre-pubescent female displaying her genitalia in a
> lascivious manner, and were uploaded to the account on June 14, 2018. The
> detective also obtained connection records that were associated with IP address

71.49.73.91 that were captured during the upload. Records showed the account was registered to 5414 Route AA, Lot 3 in Russellville, Missouri.

On August 29, 2018, the detective received Facebook records on no.brakes1523 pursuant to a state search warrant, which showed the account was registered on November 21, 2010, using the email address fox1523@aim.com with fox2315@gmail.com as a secondary address.

The detective located a thread on Facebook Messenger with HIGGINBOTHAM as the only participant, which contained the images reported to NCMEC that depicted the lascivious display of the genitalia of minor children as well as other several erotica and obscene photographs. The thread began on May 2, 2018, and stopped on June 14, 2018, when the files were flagged by Facebook and the account was disabled.

The detective tested Facebook Messenger to see if a Facebook account user can create a conversation thread within Messenger to themselves. Testing concluded an individual can attach files and messages to themselves without having a second recipient.

On September 26, 2018, the detective and other BCCTF and FBI Special Agents served a residential warrant in Cole County at 5414 Route AA, Lot 3, Russellville, Missouri, assisted by Cole County Sheriff's deputies. The detective contacted SHELDON HIGGINBOTHAM's father, who informed the detective that HIGGINBOTHAM was not home.

During the search of the residence, the following items were seized:

- A Toshiba Satellite C655D-S5130 laptop computer, serial number ZA275684Q;
- A Toshiba Satellite C655D-S5130 laptop computer, serial number ZA275808Q;
- An LG G Pad 7.0, Model UK410 computer tablet; and
- Various removable storage.

A computer forensics examiner performed an on-scene triage of the Toshiba Satellite laptop computer, serial number ZA275684Q. Usage of the email address fox2315@gmail.com and HIGGINBOTHAM's Facebook account was located on that computer.

On Tuesday, November 20, 2018, the detective interviewed HIGGINBOTHAM at the Boone County Sheriff's Department. HIGGINBOTHAM denied knowledge of receiving or possessing any child pornography. HIGGINBOTHAM admitted the two laptops belonged to him and that he owned a "couple of tablets." HIGGINBOTHAM claimed he was unable to access the LG tablet because he paid $30 for it off the street and he didn't know the passcode. The detective reminded

2

HIGGINBOTHAM that this tablet was located in an area within his reach, on his bed and under his pillow. HIGGINBOTHAM continued to deny accessing the LG tablet.

A forensic analysis of the LG tablet showed evidence that HIGGINBOTHAM was the primary user of this tablet, including evidence of HIGGINBOTHAM's Facebook account, self-produced images and log-in information. This evidence refutes HIGGINBOTHAM's claim that he did not have access to this tablet. The computer forensic examiner located approximately at least 100 images fitting the legal definition of child pornography, including images depicting pre-pubescent minors, toddlers and penetrative abuse by adults. Thousands of images of child erotica were also located on the tablet, largely depicting pre-pubescent and post-pubescent minors wearing lingerie and bathing suits in sexually suggestive poses. The computer forensic examiner also located images of minors that had been altered to depict images that appears to be of a minor engaging in sexual intercourse and oral-genital contact. Based on a comparison of HIGGINBOTHAM's self-produced nude images, it appears that HIGGINBOTHAM edited a photograph of a minor and inserted a cut out of his penis so that it appeared his own penis was penetrating the minor child or was inserted into a minor child's mouth.

The United States Probation Office calculated the Sentencing Guidelines as follows:

| | |
|---|---|
| **Base Offense Level: § 2D1.1** | **22** |
| **§ 2G2.2(b)(1)** | **-2** |
| **§ 2G2.2(b)(2)** | **+2** |
| **§ 2G2.2(b)(4)(A)** | **+4** |
| **§ 2G2.2(b)(6)** | **+2** |
| **§ 2G2.2(b)(7)(C)** | **+5** |
| **Acceptance of Responsibility** | **-3** |
| **Total Offense Level** | **30** |

With a Criminal History Category of II, this calculation results in an applicable Guidelines range of 121 to 151 months. (PSR ¶¶ 22, 35, 79.)

## II. <u>DISCUSSION</u>

Even after *United States v. Booker*, 543 U.S. 220 (2005), sentencing begins with a properly calculated advisory Sentencing Guidelines range, including any applicable departures. *See* United States Sentencing Commission, <u>Guidelines Manual</u>, § 1B1.1(a) and (b). The Court then must consider that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. USSG § 1.1B1(c).

3

The Supreme Court has observed that "in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). The Government submits that this case falls within that category of cases for which the Guidelines sentence is sufficient, but not greater than necessary, to meet the goals outlined in 18 U.S.C. § 3553(a). While 121 months is a significant sentence, given Higginbotham's criminal history and offense conduct, a low-end Guidelines sentence is reasonable and justified under § 3553(a) for the reasons set forth below.

## A. *Objections to the PSR*

Higginbotham objects to certain special conditions of supervision contained in ¶ 85 of the PSR. "A district court has broad discretion to order special conditions of supervised release if each condition: 1) 'is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a)'; 2) 'involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a)'; and 3) 'is consistent with any pertinent policy statements issued by the Sentencing Commission'." *United States v. Bender,* 566 F.3d 748, 751 (8th Cir. 2009)*, see also United States v. Mark,* 425 F.3d 505, 507 (8th Cir.2005), *citing* 18 U.S.C. § 3583; *United States v. Boston,* 494 F.3d 660, 667 (8th Cir.2007). "A condition is reasonably related if tailored to 'the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medicinal or other correctional needs." *Bender,* 566 F.3d at 751 (quoting *United States v. Crume*, 422 F.3d 728, 733 (8th Cir.2005)).

4

*Special Condition (d)*

Higginbotham objects that this condition is overbroad unless it is amended to read, "will not associate or have more than incidental contact." The Government has no objection to this amendment.

*Special Condition (e)*

Higginbotham objects to special condition (e), which reads, "The defendant will neither possess nor have under his/her control any matter that is pornographic/erotic or that describes sexually explicit conduct, violence toward children or child pornography [as described in 18 U.S.C. §§ 2256(2) and (8)], including photographs, images, books, writings, drawings, videos, and electronic material." (PSR ¶ 85(e).) Higginbotham states that this condition is erroneously overbroad and vague, and would chill many permissible, and even desirable, types of conduct and expression.

"Prohibitions on the possession of pornographic materials are not unusual special conditions, and they have often withstood First Amendment challenges." *United States v. Simons*, 614 F.3d 475, 483 (8th Cir. 2010); *see also United States v. Stults*, 575 F.3d 834, 854-55 (8th Cir. 2009) (upholding, on plain error review, a child pornography defendant's ban on "accessing, viewing, or possessing any pornographic sexually oriented or sexually stimulating materials"); *United States v. Boston*, 494 F.3d 660, 668 (8th Cir. 2007) (holding that district court did not abuse its discretion in imposing a ban on "viewing or possessing any form of pornography, sexually stimulating or sexually oriented material"); *United States v. Ristine*, 335 F.3d 692, 694-95 (8th Cir. 2003) (upholding on plain error a ban on possession pornographic materials for a defendant convicted of receiving child pornography). In order to survive court scrutiny, "inquiry must take place on an individualized basis; a court may not impose a special condition on all those found

guilty of a particular offense." *Bender*, 566 F.3d at 752 (quoting *United States v. Davis*, 452 F.3d 991 (8th Cir. 2006)).

In *Bender*, the Eighth Circuit remanded the case for additional findings of facts and resentencing because the district court's ban against possessing sexually stimulating materials was not based on the "nature and circumstances of the offense and history and characteristics of the defendant." *Bender*, 566 F.3d at 752. In *Simons*, the language was overbroad and overly vague because it prohibited Simons from possessing any material that depicts nudity. The Eighth Circuit found that, "by its terms, it would prohibit Simons from viewing a biology textbook or purchasing an art book that contained pictures of the Venus de Milo, Michelangelo's David, or Botticelli's Birth of Venus, all which depict nudity." *Simons*, 614 F.3d at 483. Unlike *Simons*, the language used by the Probation Office in this case is specifically tailored to pornographic/erotic material and is, therefore, not overly vague.

Higginbotham's case is distinguishable from *Bender* and analogous to the circumstances in *Stults*, *Boston* and *Ristine* in that the prohibition on the possession of pornographic material is based on the nature and circumstances of the offense and history and characteristics of the defendant. Specifically, Higginbotham's offense involves uploading and possessing child pornography images, which depicted prepubescent minors engaged in sexual activity. Additionally, Higginbotham used photo editing software to edit his penis into photographs of children so that it appeared they were engaged in sexual activity.

Defense counsel argues that prohibiting possession of legal adult pornography would chill many permissible, and even desirable, types of conduct and expression. However, that argument assumes Higginbotham would have the same responses to sexual images and sexual fantasy as do non-offenders. In a paper addressing Sexually Explicit Material as Contraband for Convicted Sex

6

Offenders, Jim Tanner, PhD, discusses how sex offenders respond to sexually explicit material. The research suggests that "sex offenders have different responses to sexual images and sexual fantasy than do non-offenders . . . In general, offenders perceive more deviant undertones and are more aroused to deviant undertones in pornography than are non-offender populations." Jim Tanner, PhD, *Sexually Explicit Material as Contraband for Convicted Sex Offenders*, at *2, http://www.kbsolutions.com/PornContraband.pdf.

Due to the nature of this offense, this special condition prohibiting Higginbotham's access to sexually explicit material involving adults is not overly broad.

*Special Condition (j)*

Higginbotham objects to special condition (j), which reads, "The defendant's place of residence may not be within 1,000 feet of schools, parks, playgrounds, public pools, or other locations frequented by children." (PSR ¶ 85(j).) This condition is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a), involves no greater deprivation of liberty than is reasonably necessary since Higginbotham will be required to adhere to sex offender registry requirements, and is tailored to the nature and circumstances of the offense, Higginbotham's history and characteristics, and the deterrence of future criminal conduct in that Higginbotham's offense involved a sexual attraction to children.

*Special Condition (k)*

Higginbotham objects to special condition (k), which reads, "The defendant is barred from places where minors (under the age of 18) congregate; such as residences, parks, pools, daycare centers, playgrounds and school, unless prior written consent is granted by the Probation Office." (PSR ¶ 85(5).) Higginbotham argues that this condition would prohibit him from almost all public places, such as church restaurants, the library, etc. This condition is not overly restrictive because

7

it is specifically relates to Higginbotham's offense conduct and history and, because Higginbotham may seek prior probation officer approval, is not overly restrictive.

*Special Condition (o)*

Higginbotham objects to special condition (o) unless modified to read, "the defendant shall not maintain or create a user account on any social networking site (i.e. Myspace, Facebook, Adultfriendfinder, etc.) that allows access to persons under the age of 18, or allows for the exchange of sexually explicit material, chat conversations, or instant messaging, involving persons under the age of 18, without the prior approval of the Probation Office. The defendant shall not view and/or access any web profile users under the age of 18." Higginbotham utilized the internet in order to seek and download child pornography, and used Facebook in order to send the images to himself. This condition is not overly restrictive because it specifically relates to Higginbotham's offense conduct and history.

**B.** **_Application of the § 3553(a) Factors_**

### 1. The History and Characteristics of the Defendant

The defendant's history and characteristics are the first of the factors enumerated in 18 U.S.C. § 3553(a)(1). In 2009, Higginbotham pled guilty to leaving the scene of the motor vehicle accident and operating a vehicle without a valid license in Cole County, Missouri, and was sentenced to 30 days' custody suspended with two years' probation. (PSR ¶ 39.) In 2017, Higginbotham pled guilty to possession of a controlled substance and DWI-drug intoxication in Cole County, Missouri, and was sentenced to 5 years' probation. Higginbotham tested positive for methamphetamine and marijuana on three occasions between October 2017 and March 2018. He was referred for substance abuse treatment to address his continued drug use. Higginbotham committed the present offense while on probation. (PSR ¶ 42.) Higginbotham has never been

8

Case 2:19-cr-04008-SRB   Document 26   Filed 07/24/19   Page 8 of 11

diagnosed or treated for a mental health condition. Higginbotham reports he does not believe he is in need of any mental health treatment at this time. (PSR ¶ 60.) Higginbotham reported substance abuse beginning when he was age 14. He has reported daily methamphetamine use "off and on" since he was 18 years old. Based on Higginbotham's criminal history and substance abuse history, a low-end Guidelines sentence of 121 months is warranted.

### 2. The Nature and Circumstances of the Offense and The Need to Protect the Public from Future Crimes by the Defendant

The need to protect the public from the defendant's own future crimes, 18 U.S.C. § 3553(a)(1)(C), the nature and circumstances of the offense of conviction, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A), and the need to deter other criminal conduct, 18 U.S.C. § 3553(a)(2)(B), all weigh in favor of the Guidelines-range sentence the Government recommends.

The viewing of child pornography is a vicious crime that preys upon the most vulnerable members of society. Children are exploited, raped, molested and scarred for life in order to produce the images consumed by Higginbotham. In addition to viewing child pornography, Higginbotham inserted himself into the fantasy by editing his own penis into images of children so that it appeared he was abusing minor victims. Specifically, Higginbotham edited photographs to simulate that he was engaging in sexual intercourse and oral sex with prepubescent females. The nature and circumstances of the offense and the safety of the public demands that the Court impose a significant sentence, and weighs in favor of the low-end Guidelines sentence in this case.

### 3. The Need to Avoid Unwarranted Sentencing Disparities

Uniformity in sentencing among similarly-situated defendants is also an important element of sentencing, 18 U.S.C. § 3553(a)(6), and in general, this factor weighs in favor of a Guidelines-

range sentence, since the Court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" when calculating and reviewing the Guidelines range. *Gall v. United States*, 552 U.S. 38, 54 (2007). To avoid sentencing disparity, the Government recommends that Higginbotham be sentenced to 121 months.

### 4. Balancing of All § 3553(a) Factors

Given Higginbotham's criminal history, conduct in this case, as well as the need to protect the public, a Guidelines range sentence of 121 months is warranted.

### C. *Recommended Sentence for Monetary Penalties*

Due to Higginbotham's inability to pay, the Government is not advocating that a fine be imposed. However, restitution is mandatory pursuant to 18 U.S.C. § 3663A. Restitution has been requested in the amount of $18,136.40 by the victim in the Tara series. Higginbotham possessed a single image belonging to the Tara series; therefore, the Government requests $1,000 in restitution. In addition, the $100 Special Assessment is mandatory, and must be paid in full by Higginbotham no later than the day of sentencing.

## III. CONCLUSION

The Government respectfully suggests that a sentence of 121 months constitutes a sentence sufficient, but not greater than necessary, to achieve justice.

Respectfully submitted,

**Timothy A. Garrison**
United States Attorney

By            /S/

**Ashley S. Turner**
Assistant United States Attorney
Missouri Bar No. 62314

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on July 24, 2019, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to current counsel of record.

                  /S/

**Ashley S. Turner**
Assistant United States Attorney

11